## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAURA NEAL, as Administratrix of the Estate of Wade Womack, deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-24-643-PRW |
| SHERIFF OF CANADIAN COUNTY, et al., | ) ) ) | |
| Defendants. | ) ) | |

## <u>ORDER</u>

Before the Court are five Motions to Dismiss, filed by Defendants Turn Key Health Clinics LLC (Dkt. 11), Tina Hunt (Dkt. 26), Sally Miller (Dkt. 30), Ave Giovinco (Dkt. 34), and Austin Moore (Dkt. 35), all of which are fully briefed. Also before the Court are five Report and Recommendations issued by Magistrate Judge Shon T. Erwin (Dkts. 53, 54, 55, 59, 60), the objections thereto, filed by Sally Miller (Dkt. 57), Ave Giovinco, (Dkt. 58), Tina Hunt (Dkt. 58), Plaintiff (Dkt. 62), and Turn Key (Dkt. 63), and a response to Plaintiff's Objection, filed by Austin Moore (Dkt. 64).

### *Background[1]*

This case stems from alleged constitutionally inadequate medical care. Wade Womack was arrested and taken to the Canadian County Jail on June 19, 2022. After his

---

[1] At this stage, the Court accepts Plaintiff's well-pled factual allegations as true. Thus, this account is taken from the Complaint (Dkt. 1).

arrival, he was transported to the hospital where he received some stiches to his left ear, and treatment for some cuts on his left arm, due to injuries he had sustained in a fight prior to his arrest. He was then taken back to the Jail in the early morning hours of June 20, 2022.

Upon his arrival back at the Jail, Mr. Womack reported his various medical ailments, including type 1 diabetes; a heart condition, which involved a history of thirteen stents and congestive heart failure; kidney failure; and back surgery three weeks prior on his intake form. He further reported that he was on a heart healthy and diabetic friendly diet, as prescribed by a physician, required blood thinners, and used a walker. The Jail received Mr. Womack's medical records, confirming his history and reported conditions, and his medications list.

Mr. Womack's condition rapidly deteriorated upon intake. He became weak and suffered multiple falls, resulting in cuts and bruising on his body; became incontinent; was unable to ambulate; and complained of chest pain. He also experienced denture issues, which prevented him from taking his prescribed medications. Throughout his time at the Jail, Mr. Womack was only evaluated by licensed practical nurses ("LPNs") employed by Turn Key, a private entity responsible for providing medical care to inmates at the Jail. He was never seen by a physician or more qualified medical professional.

On July 6, 2022, Mr. Womack appeared at a hearing in his state criminal case. At the hearing, Mr. Womack's criminal defense attorney argued for Mr. Womack to be released on a medical OR bond to obtain necessary medical treatment. The state court denied Mr. Womack's request to be released, and he was returned to the Jail. Early the next morning, around 3:00 a.m. on July 7, 2022, Mr. Womack was found in cardiac arrest within

his cell. He was transported to the hospital, but it was too late. The Medical Examiner concluded that his cause of death was atherosclerotic hypertensive cardiovascular disease and reported that Mr. Womack didn't have any of his prescribed medications in his system at the time of his death.[2]

Plaintiff Laura Neal filed this lawsuit on behalf of the Estate of Wade Womack, alleging claims against the Sheriff of Canadian County, Turn Key Health Clinics LLC, Nurse Ave Giovinco, Nurse Tina Hunt, Captain Austin Moore, and Nurse Sally Miller. Plaintiff set forth two causes of action: (1) violations of the Eighth and/or Fourteenth Amendments, brought under 42 U.S.C. § 1983, against Defendants Giovinco, Hunt, Miller, and Moore individually, against the Sheriff in his official capacity, and against Turn Key under a municipal liability theory; and (2) Oklahoma state law negligence, against Defendant Turn Key only.

With the exception of the Sheriff, each Defendant moved to dismiss Plaintiff's claims against them. Judge Erwin entered a Report and Recommendation for each motion to dismiss, recommending that Defendants Giovinco, Hunt, Miller, and Turn Key's Motions be denied, and that Defendant Moore's Motion be granted. Each Report and Recommendation is objected to, so the Court reviews all objected to portions of the Report and Recommendations *de novo*.[3]

---

[2] Additional facts specific to each Defendant are set forth below.

[3] Fed. R. Civ. P. 72(b)(3).

*Legal Standard*

In reviewing a Fed. R. Civ. P. 12(b) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[4] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[5] While factual allegations are taken as true, a court need not accept mere legal conclusions.[6] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough.[7]

*Analysis*

## I.     Individual Liability for Deliberate Indifference to Serious Medical Needs

The Eighth Amendment ensures inmates the right to adequate medical care.[8] Therefore, deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.[9] The same protections provided to inmates under the Eighth Amendment are

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[6] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[7] *Id.* (citing *Twombly*, 550 U.S. at 555).

[8] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[9] *Id.* at 106.

likewise applicable to pretrial detainees, such as Mr. Womack, through the Fourteenth Amendment.[10]

Establishing deliberate indifference requires a showing of both an objective and a subjective component.[11] As to the objective component, the deprivation must be one that is "sufficiently serious."[12] A medical need is sufficiently serious if it has "been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[13] The subjective component, on the other hand, requires that the official acted with "a culpable state of mind."[14] This requires that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."[15]

---

[10] *E.g.*, *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985); *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153–54 (10th Cir. 2022) (citing *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019)).

[11] *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citing *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 809 (10th Cir.1999)).

[12] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).

[13] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (further quotation omitted)).

[14] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle*, 429 U.S. at 106).

[15] *Farmer*, 511 U.S. at 837.

"[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference."[16]

Proving the requisite state of mind can be done in various ways, including circumstantial evidence of an obvious risk.[17] A plaintiff is not required to show that the official was "consciously aware [the inmate] had a specific ailment,"[18] but rather that the official "was aware [the inmate] faced a substantial risk of harm to [their] health and safety."[19] "An official disregards risk when he fails to take reasonable measures to abate the risk."[20] The Tenth Circuit has held that the subjective component can be satisfied under a "failure to properly treat" theory, or a "gatekeeper" theory.[21]

The individual Defendants concede that Plaintiff has satisfied the objective component of the deliberate indifference standard, as there is no question that death is a

---

[16] *Id.*

[17] *Id.* at 842; *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) ("[I]n some cases, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" (quoting *Farmer*, 511 U.S. at 842)).

[18] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1141 (10th Cir. 2023).

[19] *Id.*

[20] *Id.* at 1137 (citing *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020)).

[21] *Id.* (citing *Sealock*, 218 F.3d at 1211).

sufficiently serious harm.[22] Thus, the Court now turns to whether Plaintiff has pleaded sufficient facts against each individual Defendant to satisfy the subjective component.

### A.  *Nurse Sally Miller*

Plaintiff alleges that on June 26, 2022, Mr. Womack complained of "sharp, stabbing pain in the left side of his chest, consistent with his history of heart disease," and was seen by Nurse Miller, an LPN employed by Turn Key.[23] Nurse Miller knew of Mr. Womack's history of cardiovascular disease and other medical history, but she assumed that Mr. Womack's chest pain stemmed from the injuries he sustained in the fight prior to his arrest. She instructed him to rest and to follow-up with a sick call if he did not improve. She did not inform a physician or a more qualified medical professional of his complaints, despite her knowledge of his medical history and medical conditions.[24]

Judge Erwin concluded that these facts are sufficient to satisfy the subjective component of the deliberate indifference inquiry because they demonstrate that despite being aware of a serious risk to Mr. Womack's health and safety, as evidenced by Mr. Womack's symptoms and Nurse Miller's knowledge of Mr. Womack's medical history, Nurse Miller consciously disregarded the risk when she did not provide any treatment to Mr. Womack and did not report his chest pain to a physician or other more qualified medical professional. Nurse Miller objects, arguing that the Report and Recommendation wrongfully imposed a requirement that medical providers must take some kind of

---

[22] *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

[23] Pl.'s Compl. (Dkt. 1), ▶ 31.

[24] *Id.* ▶▶ 33–35.

affirmative action to avoid liability. She further objects, arguing that the Complaint did not sufficiently set forth factual allegations establishing causation.

As to Nurse Miller's first argument, she misinterprets Judge Erwin's analysis. When a medical provider provides treatment consistent with "the symptoms presented by an inmate absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met."[25] That is not to say that affirmative treatment is always required. But whether a medical provider's response is reasonable under the circumstances depends on the symptoms presented.[26]

Here, Judge Erwin concluded that Plaintiff pleaded facts supporting an inference that Nurse Miller was deliberately indifferent in this situation because Mr. Womack presented to her with symptoms demonstrating an obvious risk to his health and safety— i.e., "sharp, stabbing chest pain," which was combined with Nurse Miller's knowledge of his "extensive medical history, including his history of congestive heart failure"[27]—yet in response, Nurse Miller did not provide any treatment to Mr. Womack beyond telling him to rest and follow-up.[28] In this situation, Nurse Miller's response—telling Mr. Womack to

---

[25] *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

[26] *See id.* at 1232 (holding that providing "patently unreasonable" treatment in the face of an obvious risk can support an inference of conscious disregard); *Lucas*, 58 F.4th at 1142 ("[M]erely doing *something* . . . does not necessarily insulate one from liability." (emphasis in original)); *see also Farmer*, 511 U.S. at 836 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

[27] Pl.'s Compl. (Dkt. 1), ¶¶ 31–33.

[28] In a footnote, Nurse Miller argues that Judge Erwin erroneously relied on an allegation not contained in the Complaint that Nurse Miller didn't provide Mr. Womack any treatment. But contrary to this assertion, the Complaint states: "Nurse Miller did not inform

8

rest and follow-up—was "woefully inadequate" in light of the obviously severe symptoms that Mr. Womack complained of.[29] Further, Plaintiff alleges that as an LPN, Nurse Miller was required to inform a physician or more qualified medical professional of even minor changes in Mr. Womack's care.[30] Nurse Miller did not do so.

Nurse Miller next argues that Plaintiff did not allege facts sufficient to support a causal connection between Nurse Miller's actions and Mr. Womack's death from atherosclerotic hypertensive cardiovascular disease just eleven days later. The Complaint alleges that Nurse Miller's actions were a proximate cause of Mr. Womack's "actual and severe physical injuries, physical pain and suffering, emotional and mental distress, loss of familial relationships, and death."[31] And, contrary to Nurse Miller's argument, the Complaint also contains specific factual allegations supporting this conclusion. The Complaint alleges that Mr. Womack made his complaint of sharp, stabbing chest pain to Nurse Miller, she did not provide treatment consistent with his symptoms or report his complaint to a more qualified medical provider as required, Mr. Womack's condition rapidly deteriorated, he continued to feel pain both in his chest and all over his body, and he died from his heart condition eleven days after his complaint to Nurse Miller. Reading

---

a provider with more medical training about Mr. Womack's concerning symptoms or provide *any* additional treatment." Pl.'s Compl. (Dkt. 1), ⁋ 35 (emphasis added).

[29] *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021).

[30] Pl.'s Compl. (Dkt. 1), ¶ 32.

[31] *Id.* ⁋ 244.

the Complaint in its entirety and accepting all well-pleaded facts as true in the light most favorable to Plaintiff, Plaintiff has sufficiently set forth facts establishing causation.

Upon *de novo* review of the Report and Recommendation, the Court agrees with Judge Erwin's reasoning and conclusions therein. Thus, the Court **ADOPTS** the Report and Recommendation (Dkt. 53) in full and **DENIES** Nurse Miller's Motion to Dismiss and Brief in Support (Dkt. 30).

### B. *Nurse Ave Giovinco*

Nurse Giovinco, also an LPN employed by Turn Key, interacted with Mr. Womack on two occasions while he was at the Jail. First, during Mr. Womack's intake on June 20, 2022, Nurse Giovinco performed a mental evaluation of Mr. Womack, noting that he was "crying on and off" throughout the intake process.[32] Second, on July 3, 2022, Nurse Giovinco evaluated Mr. Womack. During this evaluation, Nurse Giovinco recorded Mr. Womack's vitals, and further noted that Mr. Womack

> could not stand, sit up, or walk without assistance and was unable to go to the bathroom by himself[,] . . . had been defecating and urinating on himself, . . . that the skin on his arms was frail and torn due to falls and scratches, . . . [he] needed 'total assistance' bathing and with self-hygiene, . . . had bruises all over his head and face from falling, and [had a] history of 13 stents and recent back surgery.[33]

Based on these facts, Judge Erwin concluded that Plaintiff sufficiently pleaded a claim against Nurse Giovinco for deliberate indifference to Mr. Womack's serious medical needs under both the failure to treat and the gatekeeper theories. Nurse Giovinco's

---

[32] *Id.* ¶ 20.

[33] *Id.* ¶¶ 39–41.

Objection to the Report and Recommendation argues that these facts are not sufficient to support an inference that Nurse Giovinco knew that Mr. Womack was at risk of death from his heart condition. Instead, Nurse Giovinco argues that Mr. Womack's symptoms were "consistent with an individual who would be better suited for housing in a long-term care facility rather than a jail," and that "a reasonable treatment plan for [Mr. Womack] was to transfer to a long-term care facility which was attempted shortly after the encounter."[34]

The symptoms observed by Nurse Giovinco would alert a reasonable person that Mr. Womack's health and safety were at serious risk, especially considering that the allegations demonstrate that Nurse Giovinco was fully aware of Mr. Womack's heart condition and recent surgery, and of his rapid decline after performing the mental evaluation less than two weeks prior.[35]  However, in response, Nurse Giovinco did not provide Mr. Womack with any treatment, and did not notify a physician or more qualified medical provider of his change in condition, despite being required to do so as an LPN.[36] Further, the Complaint does not support an inference that Nurse Giovinco thought that Mr. Womack required care in a long-term facility and responded accordingly. Conversely, the Complaint alleges that Nurse Giovinco took no action in the face of the obvious risk to Mr.

---

[34] Defs. Giovinco and Hunt's Objection to the R. & R. (Dkt. 58), at 6.

[35] *See Self*, 439 F.3d at 1232 (noting that circumstantial evidence of obviousness can arise when "a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays the referral" or when "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency." (citations omitted)).

[36] Pl.'s Compl. (Dkt. 1), ¶ 32.

Womack, and it was Mr. Womack's criminal attorney, rather than Nurse Giovinco, who attempted to secure his release in order to obtain necessary medical care three days later.[37] Accepting these allegations as true, these allegations are sufficient to state a claim under both the failure to treat and the gatekeeper theories.

Nurse Giovinco further objects, arguing that Plaintiff failed to allege that Nurse Giovinco's "inability to diagnose [Mr. Womack's] heart condition was a proximate cause of his death."[38] But Plaintiff alleged that Nurse Giovinco knew that Mr. Womack required immediate medical care, did not provide any medical care to Mr. Womack or refer him to a physician or hospital capable of treating Mr. Womack despite this knowledge, and Mr.

---

[37] *See Mata*, 427 F.3d at 756 (concluding that someone else taking action "subsequent to [the defendant's] complete denial of medical care . . . ha[s] no bearing on whether [the defendant] was deliberately indifferent *at the time* she refused to treat [the plaintiff]." (emphasis in original)); *see also Self*, 439 F.3d at 1232 (holding that the subjective component cannot be satisfied if the medical professional "provides a level of care consistent with the symptoms presented by the inmate.").

[38] Defs. Giovinco and Hunt's Objection to the R. & R. (Dkt. 58), at 6.

Womack suffered physical pain and suffering and died from his heart condition three days later. At this stage, these allegations are sufficient.[39]

As such, upon *de novo* review, the Court **ADOPTS** Judge Erwin's Report and Recommendation (Dkt. 55) in full and **DENIES** Nurse Giovinco's Motion to Dismiss and Brief in Support (Dkt. 34).

### C. Nurse Tina Hunt

On July 6, 2022, Nurse Hunt, also an LPN employed by Turn Key, testified about Mr. Womack's condition at his state criminal hearing in support of his criminal defense attorney's request for his release. Nurse Hunt testified that she had treated Mr. Womack six or seven times; the Jail did not have the necessary resources to treat Mr. Womack's condition; Mr. Womack had open wounds and bruises on his body that he did not have when he was admitted to the Jail; his wounds were "prone to infections and required immediate medical care;" he "had 'very poor' motor skills;" "likely had dementia;" had fallen; and could not use the bathroom or eat by himself.[40] She further testified that Mr. Womack needed "immediate medical care" and "required 'care at a long-term care facility.'"[41] The request for Mr. Womack's release was denied by the state court.

Plaintiff further alleges that upon returning to the Jail after testifying, Nurse Hunt documented her testimony, writing that "Mr. Womack was in a facility (the Jail) that he

---

[39] *See Sealock*, 218 F.3d at 1206 n.5 (denying a causation based argument based on evidence indicating that "the delay occasioned by [the defendant's] inaction unnecessarily prolonged [the plaintiff's] pain and suffering.").

[40] Pl.'s Compl. (Dkt. 1), ¶¶ 50–52.

[41] *Id.* ¶ 53.

did not need to be in, [he] was falling daily, he needed total assistance with normal life activities, he had bruises and abrasions all over his body, he was not eating or taking in fluids, and he was not taking his medications."[42] Nurse Hunt also evaluated Mr. Womack that night, noting that he did not take his medications or drink his nutrition shake, and had a blood pressure of 126/58, an oxygen saturation level of 95%, and a respiration rate of 22. She provided him with wound care, and "informed him on the importance of nourishment, fluids, and medications."[43] She did not, however, provide him with any additional treatment or notify a physician or more qualified medical professional about his condition, or arrange for any inpatient treatment despite her conclusions regarding the severity of his condition.

Upon these allegations, Judge Erwin concluded that Plaintiff sufficiently pleaded facts satisfying the subjective component of the deliberate indifference standard. Nurse Hunt objects to the Report and Recommendation, arguing that Mr. Womack's symptoms were not obvious enough to put her on notice that Mr. Womack was at risk of death from his heart condition, and that even if his symptoms were obvious, she attempted to "facilitate a transfer to a facility she believed to be better suited for [Mr. Womack's] condition."[44] Her arguments are unavailing.

Plaintiff has set forth facts demonstrating that Nurse Hunt was fully aware of Mr. Womack's medical conditions and history. And despite her knowledge that Mr. Womack

---

[42] *Id.* ¶ 63.

[43] *Id.* ¶ 67.

[44] Defs. Giovinco and Hunt's Objection to the R. & R. (Dkt. 58), at 8.

was in need of "immediate medical care" that could not be provided at the Jail, was not taking his required medications, and was exhibiting obviously concerning symptoms, Nurse Hunt did not pass that information along to a physician or medical professional able to diagnose Mr. Womack or provide more suitable treatment.[45] Instead, the Complaint alleges that she changed the bandages on his wounds, and counseled him to on the importance of medications and nourishment—a response that was not reasonable in light of the circumstances.[46] Taking these allegations as true, these facts support the plausible inference that Nurse Hunt was aware of a serious risk of harm to Mr. Womack's health and safety, and consciously disregarded that risk when she failed to provide treatment to Mr. Womack beyond a bandage and counseling and did not notify a more qualified medical professional so that they might be able to take action, despite her obligation to do so.[47]

As such, upon *de novo* review, the Court **ADOPTS** Judge Erwin's Report and Recommendation (Dkt. 54) in full and **DENIES** Nurse Hunt's Motion to Dismiss and Brief in Support (Dkt. 26).

### D. Captain Austin Moore

Plaintiff's factual allegations relative to Captain Moore are sparse. Plaintiff alleges that Captain Moore also testified at Mr. Womack's state criminal hearing, specifically

---

[45] Pl.'s Compl. (Dkt. 1), ¶¶ 52–53.

[46] *See Lucas*, 58 F.4th at 1142 (finding that the complaint set forth facts sufficient to support a claim under the failure to properly treat theory when the treatment provided was "not only woefully inadequate, but also plainly inconsistent with the symptoms presented."); *Self*, 439 F.3d at 1232 (holding that providing "patently unreasonable" treatment in the face of an obvious risk can support an inference of conscious disregard).

[47] Pl.'s Compl. (Dkt. 1), ¶ 32.

asserting that he had assisted Mr. Womack with getting into his wheelchair and getting dressed, and that detention staff regularly assisted Mr. Womack with getting to the bathroom and with his adult diapers.[48] Captain Moore further testified that it was Turn Key's recommendation that Mr. Womack receive full care, but the Jail did not have that ability.

Judge Erwin concluded that these allegations do not satisfy the subjective component of the deliberate indifference inquiry, and Plaintiff objects to this conclusion. Plaintiff first argues that Judge Erwin incorrectly concluded that death was the sole risk claimed by Plaintiff. But Captain Moore has conceded that Plaintiff pleaded sufficient facts satisfying the objective inquiry, so the analysis focuses on whether or not Captain Moore "knew of and disregarded an excessive risk to inmate health and safety."[49] Because Captain Moore was not a medical professional, the Court focuses on the gatekeeper theory of liability.[50]

Plaintiff made no allegations that Captain Moore was aware that Mr. Womack was suffering from symptoms beyond needing assistance getting into his wheelchair, dressing, and getting to the bathroom. Plaintiff argues that Captain Moore testified at the same hearing as Nurse Hunt, and for this reason, the Court can reasonably infer that he heard Nurse Hunt's testimony regarding Mr. Womack's medical history and condition. But even considering this inference in the light most favorable to Plaintiff, these facts are not

---

[48] *Id.* ¶¶ 57–58.

[49] *Smith*, 987 F.3d at 910 (quoting *Mata*, 427 F.3d at 751) (cleaned up).

[50] *Paugh*, 47 F.4th at 1154.

sufficient to demonstrate that Captain Moore knew of the serious risk to Mr. Womack's health and safety, or that Captain Moore was aware that Mr. Womack was exhibiting symptoms so obvious that such knowledge can be inferred. Unlike the Nurse Defendants, there are no allegations that Captain Moore was aware that Mr. Womack was not taking his prescribed medications for his heart condition, that Mr. Womack was suffering from chest pain and pain all over his body, or that his condition had rapidly deteriorated following his intake. The Complaint does not contain facts plausibly suggesting that Captain Moore's obligation to "refer or otherwise afford access to medical personnel capable of evaluating [Mr. Womack's]" was triggered.[51]

Further, Captain Moore testified that Turn Key had recommended full care for Mr. Womack, but such care was unavailable at the Jail. This is the same conclusion that was provided at the hearing by Nurse Hunt. However, Plaintiff did not allege that Captain Moore had any other interactions with Mr. Womack subsequent to the hearing that would have alerted him that Turn Key's recommendation was obviously inadequate,[52] or that

---

[51] *Lucas*, 58 F.4th at 1139 (citing *Sealock*, 218 F.3d at 1211; *Mata*, 427 F.3d at 751–61).

[52] *See Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1265 (10th Cir. 2022) ("Prison officials generally may rely on the advice and course of treatment prescribed by medical personnel." (citations omitted)).

Officer Moore caused any delay in Mr. Womack's care or prevented him from receiving care he needed.[53]

For these reasons, and upon *de novo* review, the Court **ADOPTS** Judge Erwin's Report and Recommendation (Dkt. 60) and **GRANTS** Captain Moore's Motion to Dismiss (Dkt. 35).

## II.    Claims Against Turn Key

### A.  Municipal Liability

Turn Key is a private entity that has a contract with the Jail to provide medical care to its inmates. The Tench Circuit has "extended *Monell* liability to private entities."[54] Thus, in order to bring a claim against Turn Key, Plaintiff was required to plead facts establishing municipal liability under *Monell*,[55] namely that "(1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring."[56] The "municipality itself must have generated the 'moving force' behind the alleged constitutional violation,

---

[53] *See Sealock*, 218 F.3d at 1211.

[54] *Est. of Beauford*, 35 F.4th at 1275 (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003)).

[55] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978).

[56] *George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs.*, 32 F.4th 1246, 1253 (10th Cir. 2022).

either through official policy or widespread and pervasive custom," to support the imposition of liability.[57]

Judge Erwin concluded that Plaintiff sufficiently set forth facts satisfying this standard. Turn Key objects, first arguing that Plaintiff has failed to sufficiently plead facts establishing that there was an underlying constitutional violation. But as set forth above, the Court disagrees and finds that Plaintiff has sufficiently alleged that Defendants Hunt, Giovinco, and Miller deprived Mr. Womack of his constitutional rights.[58]

Next, Turn Key argues generally that Plaintiff failed to allege specific facts establishing an official policy or custom of Turn Key. But as thoroughly discussed by Judge Erwin, Plaintiff set forth ample facts asserting that Turn Key had a policy or custom of under staffing, under training, and under supervising, all driven by its cost-saving incentives. Specifically, Plaintiff alleges that in order to boost profits, Turn Key had a policy of under staffing its facilities such that it was impossible for the few physicians employed by Turn Key to supervise or provide required medical care to inmates within their care, leaving this responsibility to unqualified and under trained medical personnel.

---

[57] *Est. of Beauford*, 35 F.4th at 1275 (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).

[58] Though the Court finds that Plaintiff has sufficiently alleged underlying individual constitutional violations, the Court also agrees with Judge Erwin's conclusion that the Complaint sets forth sufficient facts demonstrating a systemic failure. *See Lucas*, 58 F.4th at 1144 (citing *Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166, 1191–92 (10th Cir. 2020); *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 306–07 (10th Cir. 1985)).

While Turn Key is correct that financial incentives are not *per se* improper,[59] Plaintiff pleaded facts beyond Turn Key's desire to make a profit. Plaintiff pleaded sufficient facts to establish the first element of *Monell* liability.

Moving to causation, Plaintiff has set forth facts demonstrating that Mr. Womack was solely cared for by LPNs employed by Turn Key who knew of his medical conditions, his medical history, his inability to take his required medications, and his rapidly deteriorating condition, but despite this knowledge, none of Turn Key's employees abided by their obligation to notify a physician or medical provider with more training of Mr. Womack's situation. Further, none of Turn Key's employees arranged for Mr. Womack to be evaluated by a physician or taken to a hospital for treatment. And along with these allegations, Plaintiff has set forth facts plausibly suggesting that it was *because* of Turn Key's cost-cutting measures and policies to under train, under supervise, and under staff that this outcome resulted. Plaintiff has satisfied her burden of setting forth facts that plausibly suggest that Turn Key's policies caused Mr. Womack's injuries.

Turn Key does not object to Judge Erwin's conclusion that Turn Key's maintenance of the above-described policies was done in deliberate indifference. And, for the reasons set forth in Judge Erwin's Report and Recommendation, the Court agrees that Plaintiff's

---

[59] *See Lucas*, 58 F.4th at 1145 ("To the extent [the contract between the county and medical services contractor] reveals a financial incentive, it is no more troublesome than any institution's general desire to maintain low costs to the extent reasonably possible.").

Complaint sufficiently satisfies this element. Thus, Plaintiff has sufficiently alleged a *Monell* claim against Turn Key.

### B. State Law Negligence

In addition to a the *Monell* claim, Plaintiff also alleges a claim for state law negligence against Turn Key. Turn Key argues that Plaintiff's state law claim should be dismissed because (1) Turn Key is entitled to immunity under the Oklahoma Governmental Tort Claims Act ("OGTCA"), and (2) Plaintiff's claim is barred by the one year statute of limitations set forth in 12 O.S. § 95(A)(11).

In his Report and Recommendation, Judge Erwin provided a detailed summary of the current state of Oklahoma law regarding whether the employees of a healthcare contractor are considered "employees" entitled to tort immunity under the OGTCA, concluding that the immunity determination is premature at the motion to dismiss stage. Turn Key objects, arguing that the facts in this care are sufficiently developed to make this determination. Because the question has not yet been resolved by the Oklahoma Supreme Court, however, deciding the issue at this juncture is premature.[60]

Next, Judge Erwin concluded that the OGTCA's limitations period is controlling in this case, instead of the more general limitations period set forth in 12 O.S. § 95(A)(11).[61]

---

[60] *Lucas*, 58 F.4th at 1148; *Bond v. Regalado*, No. 22-5065, 2023 WL 7014047, at *3 (10th Cir. Oct. 25, 2023); *Stewart ex rel. Stewart v. Turn Key Health Clinics LLC*, No. CIV-23-01046-JD, 2024 WL 4543201, at *3–4 (W.D. Okla. Oct. 22, 2024); *Bonilla v. Gerlach*, No. CIV 23-1060-R, 2024 WL 457172, at *4–5 (W.D. Okla. Feb. 6, 2024).

[61] OKLA. STAT. tit. 12, § 95(A)(11) provides that "[a]ll actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate . . . shall be commenced within one (1) year after the cause of action shall have accrued[.]"

Though Turn Key objects, Turn Key makes no argument that Judge Erwin incorrectly concluded that the OGTCA is the controlling statute in this case. Rather, Turn Key argues that dismissal of Plaintiff's state law claim against Turn Key is appropriate because even if the OGTCA's limitations period applies, Plaintiff did not include facts in her Complaint demonstrating her compliance with the OGTCA's notice provisions.

Under 57 O.S. § 566.4, a statute applicable to prisoners or former prisoners, "no tort action or civil claim may be filed . . . until all of the notice provisions of the [OGTCA] have been fully complied with."[62] Thus, because this statute "applies the notice provisions of the OGTCA to lawsuits brought by prisoners or former prisoners against private correctional facilities,"[63] and extends to "any claim against a private correctional contractor and its employees for actions taken pursuant to or in connection with a governmental contract,"[64] the OGTCA's provisions are controlling in this case.[65]

As such, prior to bringing a claim, a prisoner or former prisoner must "present a claim to the state or political subdivision for any appropriate relief . . . within one (1) year of the date the loss occurs."[66] Then, only after the claim is denied claim "in whole or in

---

[62] OKLA. STAT. tit. 57, § 566.4(A), (B)(2).

[63] *Hall v. GEO Grp., Inc.*, 324 P.3d 399, 404 (Okla. 2014).

[64] OKLA. STAT. tit. 57, § 566.4(B)(2).

[65] *See Stewart*, 2024 WL 4543201, at *4 (holding that the OGTCA's provisions control over 12 O.S. § 95(A)(11)); *Hall*, 324 P.3d at 404 (same); *Brown v. Creek Cnty. ex rel. Creek Cnty. Bd. of Cnty. Commn'rs*, 164 P.3d 1073, 1076 (Okla. 2007) (holding that when in conflict with other statutes "the plain language of the [O]GTCA dictates that its prescriptions must control over any others.").

[66] OKLA. STAT. tit. 51, § 156(A)–(B).

part" may a person "initiate a suit."[67] A person has "one hundred eighty (180) days after denial of the claim" to initiate their suit.[68] But because the "right to sue does not attach until the claim has been denied or is deemed denied, . . . causes of action brought under the [O]GTCA do not accrue until that point."[69]

Turn Key correctly notes that notice under the OGTCA is "a mandatory prerequisite jurisdictional requirement to filing a claim for tort damages,"[70] and must "be completed prior to the filing of any pleadings."[71] For this reason, "the OGTCA is a jurisdictional limitation period, as opposed to a statute of limitations,"[72] and "compliance must be specifically alleged by a claimant in the complaint."[73] Plaintiff sets forth no facts indicating

---

[67] *Id.* § 157(A).

[68] *Id.* § 157(B).

[69] *Brown*, 164 P.3d at 1075.

[70] *Hall*, 324 P.3d at 400.

[71] *Id.* at 404.

[72] *Pappalardo v. GEO Grp., Inc.*, No. CIV-14-177-R, 2014 WL 2982919, at *4 (W.D. Okla. July 1, 2014); *see Hall*, 324 P.3d at 404.

[73] *Kozak v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, No. 16-CV-352-JHP-TLW, 2017 WL 2494628, at *3 (N.D. Okla. June 9, 2017) (citing *Girdner v. Bd. of Comm'rs*, 227 P.3d 1111, 1115–16 (Okla. Ct. App. 2009) (other citations omitted); *Allen v. Yates*, No. CIV-08-215-FHS, 2009 WL 661378, at *2 (E.D. Okla. Mar. 11, 2009) (holding that the failure to allege compliance with the OGTCA is "fatal to [the plaintiff's] ability to pursue any state tort claims against [the defendant]"); *Parker v. City of Tulsa*, No. 16-CV-0134-CVE-TLW, 2016 WL 4734655, at *3 (N.D. Okla. Sept. 9, 2016) ("[W]hen a complaint alleges an OGTCA claim but does not assert the notice requirement has been met, the claim should be dismissed for failure to state a claim." (citations omitted)).

compliance with the OGTCA's notice provision in her Complaint. Thus, her state law negligence claim against Turn Key must be dismissed.

Accordingly, upon *de novo* review, the Court **ADOPTS IN PART** Judge Erwin's Report and Recommendation (Dkt. 59), as set forth herein, and **GRANTS IN PART** and **DENIES IN PART** Turn Key's Motion to Dismiss (Dkt. 11). Plaintiff has plausibly set forth a *Monell* claim against Turn Key, but Plaintiff's state law negligence claim is **DISMISSED** without prejudice.

### *Conclusion*

Having reviewed the Report and Recommendations (Dkts. 53, 54, 55, 59, 60) *de novo*, the Court **ADOPTS** them to the extent set forth above, and:

1. **DENIES** Sally Miller's Motion to Dismiss and Brief in Support (Dkt. 30);

2. **DENIES** Ave Giovinco's Motion to Dismiss and Brief in Support (Dkt. 34);

3. **DENIES** Tina Hunt's Motion to Dismiss and Brief in Support (Dkt. 26);

4. **GRANTS** Austin Moore's Motion to Dismiss (Dkt. 35); and

5. **GRANTS IN PART** and **DENIES IN PART** Turn Key's Motion to Dismiss and Brief in Support (Dkt. 11).

**IT IS SO ORDERED** this 20th day of February 2025.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE